**Keith Lamont WHITE, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–92–01172–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 23, 1993.

Hanna & Associates, Annette K. Hanna, Houston, for appellant.

Bill Turner, Douglas Howell, III, Bryan, for appellee.

Before HEDGES, COHEN and MIRABAL, JJ.

**OPINION**

HEDGES, Justice.

In three points of error, appellant challenges his conviction for burglary of a motor vehicle. A jury found him guilty and assessed punishment at 50–years confinement after his plea of true to four enhancement paragraphs. We affirm.

**The Facts**

Officer Doug Muxworthy of the College Station Police Department testified that at approximately 1:00 a.m. on December 25, 1991, he observed appellant and a female companion approach his automobile, which was parked on the street. From his upstairs apartment window, he saw appellant enter his car and begin rummaging around in the interior. The automobile's dome light was on, and appellant was wearing light colored clothing. After calling the police, Officer Muxworthy left his apartment to follow appellant and his companion. The two began to run at the sound of Officer Muxworthy's shouts and at the sight of a police patrol car. The police soon discovered them hiding on the porch of a nearby apartment. The police recovered a flashlight and a screwdriver from the porch.

Appellant adamantly denied having committed the offense charged. He testified that he was in the neighborhood on foot only because his car had broken down. The tools found on the porch had been used to attempt to repair his car. He never approached Officer Muxworthy's vehicle, much less burglarized it.

**Lesser Included Offense**

In point of error one, appellant asserts that the trial court erred in refusing to include an issue on the lesser included offense of attempted burglary of a motor vehicle in the jury charge. Appellant claims that it is possible, if not probable, that the jury believed only part of the testimony presented at trial. As we understand appellant's argument, the trial court should have given the jury an opportunity, in the form of a lesser included offense issue, to compromise its verdict in light of what appellant would characterize as equivocal evidence of guilt.

If evidence from any source raises the issue of a lesser included offense, it must be included in the court's charge. *Gibson v. State,* 726 S.W.2d 129, 132 (Tex.Crim.App. 1987) (op. on reh'g); *Ojeda v. State,* 712 S.W.2d 742, 744 (Tex.Crim.App.1986); *Stahl v. State,* 712 S.W.2d 783, 788 (Tex.App.— Houston [1st Dist.] 1986), *aff'd,* 749 S.W.2d 826 (Tex.Crim.App.1988). It is not the trial court's function to determine the credibility or weight to be given the evidence raising the lesser included offense issue. The fact that the evidence raising the issue may conflict with or contradict other evidence in the case is not relevant to the determination. *Blalock v. State,* 847 S.W.2d 461, 463 (Tex. App.—Houston [1st Dist.] 1993, pet. denied). It is the jury's duty, under proper instruction, to determine whether the evidence is credible and supports the lesser included offense. *Gibson,* 726 S.W.2d at 133; *Moore v.*

*State,* 574 S.W.2d 122, 124 (Tex.Crim.App. [Panel Op.] 1978); *Blalock,* 847 S.W.2d at 463.

A trial court need not submit a lesser included offense issue unless the conditions of a two-pronged test are satisfied. In *Royster v. State,* 622 S.W.2d 442 (Tex.Crim.App. [Panel Op.] 1981) (op. on reh'g), the Court of Criminal Appeals enunciated the test for mandatory inclusion of a lesser included offense issue:

> First, the lesser included offense must be included within the proof necessary to establish the offense charged, and second, some evidence must exist in the record that if the defendant is guilty, he is guilty only of the lesser charge.

*Id.* at 446. The same court recently refined the *Royster* test to more properly delineate the respective roles of the trial court and the jury. In *Rousseau v. State,* 855 S.W.2d 666 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993), it rephrased the second prong of the test as follows: "[S]econd, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense." *Id.* at 673 (emphasis added).

In determining whether the evidence in the record raises the issue of a lesser included offense, the court must consider all the evidence, whether introduced by the State or by the defendant. *Lugo v. State,* 667 S.W.2d 144, 147 (Tex.Crim.App. 1984). Simply because a lesser offense is included within the proof of a greater offense, however, does not automatically entitle a defendant to a charge on the lesser offense. *Aguilar v. State,* 682 S.W.2d 556, 558 (Tex. Crim.App.1985). The evidence may raise a lesser included offense issue in one of two ways. First, there may be evidence that refutes or negates other evidence of the greater offense. Mere denial by the defendant of the commission of the offense will not

in and of itself raise the issue. *Saunders v. State,* 840 S.W.2d 390, 391–92 (Tex.Crim.App. 1992). Second, a lesser included offense issue may be raised if the evidence is subject to different interpretations. *Id.* at 392.

In the case before us, appellant has met the first prong of the test: attempted burglary of a motor vehicle is a lesser included offense of burglary of a motor vehicle, the offense charged. TEX.CODE CRIM.P.ANN. art. 37.09 (Vernon 1981).[1] We look to the record to determine whether the evidence would permit a jury rationally to find that if appellant is guilty, he is guilty only of attempted burglary of a motor vehicle. We find that it does not.

Appellant and his companion both testified that he did not commit the burglary. They denied that he approached or touched the car. Under *Rousseau,* appellant's claim fails because the only evidence in the record establishes either 1) his guilt of burglary of a motor vehicle, or 2) innocence of any offense. There is no evidence in this record to raise an issue that if appellant is guilty, he is guilty only of attempted burglary of a motor vehicle.

Appellant argues that the application of the *Saunders* criteria compels a lesser included offense issue. We disagree. The only evidence that would refute or negate the evidence of greater offense, appellant's denial that he committed the offense, is insufficient to raise the lesser charge. *Saunders,* 840 S.W.2d at 391–92. Likewise, we reject appellant's argument that because this evidence is subject to different interpretations, the lesser charge was required. *Id.* at 392. There is no room for interpretation of the evidence: the jury had to believe Officer Muxworthy's testimony that appellant was guilty of burglary of a motor vehicle, or appellant's testimony that he was innocent of any offense. The trial court did not err in refusing to submit a charge on the lesser included offense of attempted burglary of a motor vehicle.

We overrule point of error one.

---

1. An offense is a lesser included offense if: ...
 (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM.P.ANN. art. 37.09 (Vernon 1981).

## Bias, Prejudice, or Interest Testimony

In point of error two, appellant contends that the trial court erred in not allowing testimony about a plea offer that would show bias, prejudice, or interest of a witness.

Appellant called Glenda Searcy, his cousin and female companion the night of his arrest, to testify in his behalf. She testified that appellant never entered, or even touched Officer Muxworthy's car. On cross-examination, the prosecutor attempted to demonstrate her bias as a witness:

[Prosecutor]: Ms. Searcy, it's true—and you have, basically, in a sense, a vested interest to see this case go away, don't you?

[Ms. Searcy]: I have a what?

[Prosecutor]: A vested interest. You have a personal stake to see that your cousin gets found not guilty, don't you?

[Ms. Searcy]: No I don't. I'm just here to tell the truth.

[Prosecutor]: Because if he gets found not guilty, then your case goes away, doesn't it?

[Ms. Searcy]: No.

Later, the prosecutor returned to this subject:

[Prosecutor]: Okay. But you realize that you do have something to put on the line here, don't you? I mean, you've been indicted. You're a co-defendant in this case. Isn't that correct?

[Ms. Searcy]: Yes.

[Prosecutor]: You've been charged with this. So it's not like you're a disinterested witness now, is it?

[Ms. Searcy]: No. I wasn't disinterested at first.

[Prosecutor]: You have something to gain by testifying here, don't you?

[Ms. Searcy]: Yes, I can get it off—get off myself, yes.

When appellant tried to explore the witness's vested interest in *not* testifying, the prosecutor objected. On voir dire, outside the presence of the jury, Ms. Searcy testified that the State had offered her deferred adjudication if she did not testify. She had a lot to lose by testifying because the offer was no longer open if she testified. Appellant offered the testimony to show that Ms. Searcy could lose as much by testifying as she could gain by testifying. The trial court overruled the State's objection that the testimony was inadmissible under TEX.R.CRIM.EVID. 408 and 410 and agreed to admit the testimony to show bias, interest, or prejudice. The judge admonished appellant's attorney that she was not to lead her witness during questioning.

Once the jury returned to the court room, appellant continued the examination of the witness:

[Defense Counsel]: Glenda, you were asked earlier if you had a vested interest to testify. Do you have a vested interest to not testify?

[Ms. Searcy]: Ms. Hanna, like I was saying earlier—

[Prosecutor]: Your Honor, I object. It's not responsive to the question.

[Ms. Searcy]: I was fixing to answer her question.

[The Court]: Go ahead and answer the question.

[Ms. Searcy]: As I was trying to say earlier, I am not up here to clear my cousin's name so that I get off. I'm up here to tell what really happened that night on the 25th and how it really happened.

[Defense Counsel]: You were asked on cross examination if you had something to gain by testifying. Do you have something to lose by testifying?

[Prosecution]: Your Honor, this has been asked and answered.

[The Court]: Overruled.

[Defense Counsel]: ... You were asked on cross examination didn't you have something to gain by testifying. Do you have something to lose by testifying?

[Ms. Searcy]: No.

[Defense Counsel]: You don't have anything to lose by testifying? Are you okay, hon?

[Ms. Searcy]: Yes.

[Defense Counsel]: Do you need a second? Here is a Kleenex. Come on now. Take your time. Do you want me to ask my question again?

[Ms. Searcy]: I don't think so, Ms. Hanna.

[Defense Counsel]: You don't think so? Have you been offered anything—

[Prosecutor]: Your Honor, it's a leading question. I object on the basis of leading.

[Ms. Searcy]: The only thing that I can really say—

[Defense Counsel]: Wait, wait, wait.

[The Court]: The objection to that question is overruled.

[Defense Counsel]: Go ahead with your answer.

[Ms. Searcy]: Ms. Hanna, I'm not for sure.

[Defense Counsel]: You're not for sure, okay. What is your personal feeling? Do you feel like that you lose anything if you do testify? What is in your best interest?

[Ms. Searcy]: Can I tell it the way I really feel?

[Defense Counsel]: I'm sorry, honey. I can't understand.

[Ms. Searcy]: Nothing, I guess.

[Defense Counsel]: Did the D.A.'s office make you any kind of—

[Prosecution]: Your Honor, I object. It's a leading question. Asked and answer, asked and answered.

[COURT]: Objection sustained.

. . . .

[Defense Counsel]: Do you understand whether or not you personally received personal benefits if you do not testify? Has that been conveyed to you? Is that your understanding?

[Ms. Searcy]: Could you repeat it again?

[Defense Counsel]: Do you have an understanding as to whether or not you would personally benefit or have a special offer made to you if you do not testify?

[Ms. Searcy]: I clearly understood it a little bit that if I testified—

[Prosecutor]: Your Honor, I'm going to object. May I approach, please, sir?

[Prosecutor]: This is the same line of questioning over and over again. She has been asked this question over and over again, and she says, "No, I don't know. No, no, no, no." And the question keeps being asked, and it has been answered. It's repetitious.

[Defense Counsel]: She' obviously upset. I asked the question. He did not object. She started answering the question. She has gotten part way into this sentence. I just ask that she be allowed to finish her response. I don't have any further questions on the issue

[COURT]: Overruled.

[Defense Counsel]: Go ahead, hon. Finish what you were saying.

[Ms. Searcy]: Yeah, I kind of understand that—I don't know.

[Defense Counsel]: You don't understand?

[Ms. Searcy]: (Witness nodded negatively).

[Defense Counsel]: I pass the witness.

We find that the trial court did not abuse its discretion. It correctly ruled that her testimony about her understanding of the State's plea offer and its relationship to her testimony was admissible to show bias, prejudice, or interest. The court allowed appellant broad leeway in examining Ms. Searcy.

■ The trial court erred in ruling that appellant's aborted question "did the D.A.'s office make you any kind of . . ." was leading. But an examination of this part of the record as a whole demonstrates that the error was harmless because appellant had ample opportunity before and after this one particular

question to explain the plea offer and the danger of her testifying. Neither the witness' inability or unwillingness to repeat her voir dire testimony nor the failure of defense counsel to impeach her with that testimony lay within the trial court's responsibility to remedy. We find that the trial court did not disallow Ms. Searcy's testimony, but rather that the testimony is not in the record because of the reluctance, for reasons unknown, of the witness herself.

We overrule point of error two.

**Exclusion of Witnesses Rule**

In point of error three, appellant contends that the trial court erred in allowing a violation of TEX.R.CRIM.EVID. 613, the rule permitting exclusion of witnesses.

 At the beginning of trial, the State invoked the rule, whereupon the trial court gathered all the witnesses and explained that they would be required to remain outside the courtroom during the presentation of any testimony in the case. Additionally, they were prohibited from discussing their respective testimonies with anyone other than the attorneys involved with the case. Violation of this rule could lead to exclusion of testimony or citation for contempt.

Late in the trial, appellant's witness, Lucille Rosprim, testified that while waiting in the hall outside the courtroom, she saw and heard one officer tell another officer what he had just testified to in court. She identified the officer asking the questions as the one wearing boots up to his knees and the one responding as the short officer with blonde hair and mustache. All she heard was the latter officer's statement that "I said I was the first officer on the scene." They then turned to the side such that she could no longer see or perceive what they were saying. Officer Muxworthy, the questioner with the knee boots, had been the State's opening witness. He was recalled to the stand by the State before Ms. Rosprim's testimony. He testified that the date of the offense was December 25, 1991, that the offense took place in Brazos County, Texas, that he was

the owner of the car, and that he did not give appellant his effective consent to enter the car.

Appellant contends that the trial court erred in allowing the recall testimony of Officer Muxworthy because he had violated the exclusion of witnesses rule by discussing another witness' testimony with that witness. We disagree. This Court has held that [t]he purpose of the rule is to prevent corroboration, contradiction, and the influencing of witnesses. *Stringer v. State*, 845 S.W.2d 400, 405 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd) (citing *Gordon v. State*, 796 S.W.2d 319, 323 (Tex.App.—Austin 1990, pet. ref'd)). The trial court has broad discretion to determine whether a violation *harms* the defendant, and we will not disturb its ruling absent a clear abuse of discretion. *Beets v. State*, 767 S.W.2d 711, 747 (Tex.Crim.App.1987), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3272, 106 L.Ed.2d 579 (1989).

In assessing whether the trial court abused its discretion in condoning a violation of the rule or exempting Officer Muxworthy from its penalties, we address two questions:

(1) Did the witness actually hear the testimony or confer with another witness without court permission, and

(2) Did the witness' testimony contradict the testimony of a witness he actually heard from the opposing side or corroborate the testimony of another witness he actually heard from the same side on an issue of fact bearing upon the issue of guilt or innocence.

*Cooks v. State*, 844 S.W.2d 697, 733 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993) (citing *Guerra v. State*, 771 S.W.2d 453, 475 (Tex.Crim.App.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3260, 106 L.Ed.2d 606 (1989)). The first question relates to the existence of a violation, while the second invokes a harm analysis.

Appellant cannot demonstrate that the recall testimony harmed him. Officer Muxworthy's testimony on recall neither contradicted

the testimony of a witness he actually heard from the other side, nor did it corroborate the testimony of a witness he actually heard from the same side. Muxworthy had already given the majority of his testimony. On recall, he testified only about matters that were subject to objective proof, none of which was contradicted. We find that the trial court did not abuse its discretion in allowing the recall testimony of Officer Muxworthy.

Collateral to his abuse of discretion complaint, appellant challenges the very validity of requiring proof of harm. Appellant asserts that because "it is many times impossible for the defendant to prove such harm. Thus [Tex.R.Crim.Evid.] 613 has no effect and is a nullity." He further claims that the application of a harm analysis "unconstitutionally places the burden on the defendant to prove his innocence in that he must show harm from the corroborated testimony of law enforcement officers which prevents the defendant from obtaining a fair trial." Appellant cites no authority for this proposition. We decline to adopt, as appellant urged on oral argument, a *per se* exclusionary rule for violations of Tex.R.Crim.Evid. 613.

We overrule point of error three.

We affirm the judgment of the trial court.

COHEN, Justice, concurring.

I join the Court's opinion, but wish to comment further regarding point of error two.

Ms. Searcy's defense attorney, Mr. O'Connor, testified outside the jury's presence regarding his plea discussions with the prosecutor and with Ms. Searcy. His testimony is important in understanding what promises or threats, if any, the State made to Ms. Searcy. Mr. O'Connor testified that the prosecutor offered deferred adjudication to Searcy without any discussion, much less any agreement, about testifying. There never was any plea agreement because Searcy never accepted any offer from the State. When Mr. O'Connor learned that appellant might call Ms. Searcy as a witness, he advised her to exercise her right not to testify. He further testified as follows:

I also told her that it might have implications on a plea agreement if she did testify. I then had a very brief discussion with the State this morning about my concern about her testifying, and without any details said, implication to me or the indication to me from the State was that the previous offer of deferred adjudication might not be available if she did testify. I then further counseled with my client and basically told her that deferred adjudication was an open option for her at this time and would be open if she did not testify, but that if she did testify, that availability or her option for deferred adjudication might not be available. And that's as far as any discussions on plea bargain got.

Mr. O'Connor agreed that the original offer of deferred adjudication was not conditioned on Ms. Searcy not testifying, and that the State was not offering plea bargains in order to keep her from testifying.

Given this state of the record, it is easy to understand how an unsophisticated witness, or even a sophisticated one, might testify as Ms. Searcy did about the offer of deferred adjudication. If appellant's counsel was dissatisfied with Ms. Searcy's testimony, she could have called either Mr. O'Connor or the prosecutor as a witness, or offered into evidence the prior testimony outside the jury's presence in which Ms. Searcy testified that she had been offered deferred adjudication if she did not testify but that the offer might be withdrawn if she testified.

This case resembles *Burkhalter v. State,* 493 S.W.2d 214, 217–19 (Tex.Crim.App.1973), in which the State offered leniency to the witness' lawyer, who never communicated the offer to the witness. The difference that allows this case to be affirmed is that appellant's counsel knew the testimony of Ms. Searcy and Mr. O'Connor and had the opportunity to bring them before the jury.

MIRABAL and HEDGES, JJ., also sitting.