**Opinion issued October 31, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00812-CR

_____

**CHESTER MOSLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Case No. 1554583**

---

## MEMORANDUM OPINION

Appellant, Chester Mosley, pleaded guilty to the first-degree felony offense of injury to a child without an agreed recommendation. At the conclusion of a presentence investigation ("PSI") hearing, the trial court found appellant guilty of

the charged offense and sentenced him to twenty-six years' confinement in the Texas Department of Criminal Justice. In two points of error, appellant contends that (1) he received ineffective assistance of counsel during the hearing and (2) he was subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution because he received a twenty-six year sentence when he was eligible for probation. We affirm.

## Background

On January 6, 2017, appellant stayed home with the twenty-three month old son ("the complainant") of his girlfriend, Erica Hill. At 6:40 p.m., appellant called Hill and told her that he had given the complainant a bath, and that the complainant had fallen and scraped his arm while playing. At 9:00 p.m., appellant called Hill again and told her that the complainant had been scratching his "behind really bad under his diaper." Appellant stated that he had observed some "black stuff" under the complainant's nails, and that when he removed the complainant's diaper he saw what looked like a burn. Appellant sent Hill a picture of the burn. Hill left work and called 911.

On April 26, 2018, appellant pleaded guilty to the first-degree felony offense of injury to a child,[1] without an agreed recommendation from the State. At the PSI

---

[1]     TEX. PENAL CODE § 22.04(a) ("A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowingly, or recklessly by omission, causes to a child . . . (1) serious bodily

2

hearing, the State called four witnesses and introduced as exhibits the PSI report, the complainant's medical records, appellant's recorded statements, and photographs of the complainant's injuries.

Dr. Todd Huzar, the director of pediatric burn surgery at Children's Memorial Hermann Hospital, testified that the complainant was transferred from Texas Children's Hospital to Memorial Hermann due to the severity of his burns, where he remained hospitalized for approximately nineteen days. Dr. Huzar stated that the complainant suffered second-degree burns to nine percent of his body, including his buttocks, genitals, thighs, right elbow, and the back of his right leg, and that his burns were consistent with being submerged in 121 degree Fahrenheit water for thirty to sixty seconds. According to Dr. Huzar, the complainant would have cried, screamed, and tried to get out of the scalding water, and that the complainant would have sustained burns to his feet if he had been sitting or standing in the bathtub.

Kathleen Sagmiller, a social worker, spoke with Hill and appellant at the hospital. Appellant told Sagmiller that the water temperature was "okay" when he put the complainant in the bathtub. Appellant stated that he was in the adjoining part of the bathroom while the complainant was in the bathtub, and that there was no indication that the complainant was in pain. Sagmiller testified that she found

injury[.]); § 22.04(e) ("An offense under Subsection (a)(1) . . . is a felony of the first degree when the conduct is committed intentionally or knowingly.").

3

appellant's version of events inconsistent with an accident. After her conversation with appellant, Sagmiller recommended that the care team consult with child abuse physicians.

Dr. Michelle Ruda, a member of the University of Texas McGovern Medical School's child protection division, evaluated the complainant. She testified that he was in pain, vomiting, and not eating. Dr. Ruda also observed bruising on the complainant's abdomen and noted that his liver and pancreatic enzymes were quite elevated. An abdominal CT scan revealed that the complainant had a lacerated liver and inflamed pancreas. Dr. Ruda testified that a liver laceration such as complainant's typically occurs from a significant blunt force trauma.

In the course of her evaluation, Dr. Ruda interviewed appellant. Appellant told Dr. Ruda that he had filled the bathtub about one-third full and tested the water, which he described as warm but not hot, with his foot. Appellant stated that the complainant did not appear to be in any discomfort or pain, and that he did not observe any issues with the complainant's skin until about forty minutes later when he noticed that the complainant's skin on his right elbow was falling off. Dr. Ruda testified that she found appellant's explanation to be inconsistent with the complainant's injuries.

The complainant's foster mother testified that the complainant was placed with her family after he was released from the hospital. She stated that the

4

complainant sustained permanent discoloration to the skin on his buttocks, lower back, right leg, and elbow as a result of his burns. The foster mother testified that when the complainant was first placed with her, he was very stoic and emotionless, and that he would stand next to her rather than play with other children. She also testified that bath time was initially very difficult for the complainant and that he is still sometimes uncomfortable around men.

Appellant testified that he stayed home with the complainant while Hill was at work. When he noticed that the complainant had soiled his diaper, appellant went to the closet to look for baby wipes. Appellant testified that, as he turned to leave the closet, he tripped over the complainant and accidentally stepped on him. He then put the complainant in the bathtub and left the room. Appellant testified that he let the water run in the bathtub while he brushed his hair and texted a girl on his phone whom he planned to meet later with his friend. As he looked for clothes, appellant heard the complainant moaning and "knew he was troubled." Appellant returned to the bathroom and noticed that the complainant, who was sitting in the bathtub, was "red all over" and took him out of the bathtub. Appellant testified that he realized that he had "messed up" but did not want Hill to find out. When appellant began dressing the complainant, he noticed that the skin on the complainant's arm had come off and called Hill. Later that evening, appellant noticed the complainant

scratching his bottom. When appellant took off the complainant's diaper, he saw that his skin had come off. Appellant called Hill again and Hill called 911.

Appellant testified that, when he was sixteen years old, he was charged with capital murder but that the charge was later dropped to aggravated robbery and he was sentenced to ten years' juvenile supervision. During his juvenile detention, appellant was written up twenty-two times for infractions, including verbal and physical altercations. Between 2013 and 2016, appellant served jail time for six misdemeanor offenses, including evading arrest, failure to identify as a fugitive, possession of marijuana, burglary of a motor vehicle, and failure to stop and give information after hitting someone with his car.

At the conclusion of the PSI hearing, the trial court sentenced appellant to twenty-six years' confinement. This timely appeal followed.

## Ineffective Assistance of Counsel

In his first point of error, appellant contends that he received ineffective assistance of counsel during the PSI hearing because his trial counsel failed to (1) adequately prepare him to testify at trial, (2) prove his eligibility for probation, and (3) object to his twenty-six year sentence as cruel and unusual punishment.

### A. Standard of Review and Applicable Law

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*. 466 U.S. 668, 687 (1984). Under

6

the *Strickland* two-step analysis, a defendant must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687–88, 694; *Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Andrews*, 159 S.W.3d at 101.

An "[a]ppellant bears the burden of proving by a preponderance of the evidence that his counsel was ineffective." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* at 814. However, a reviewing court will rarely be able to fairly evaluate the merits of an ineffective assistance claim on direct appeal because the trial record is usually undeveloped and inadequate to reflect the motives behind trial counsel's actions. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). In fact, trial counsel should have the opportunity to explain his or her actions before being found ineffective. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex.

7

Crim. App. 2003). When the record is silent, we may not speculate to find trial counsel ineffective. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance is within a wide range of reasonable professional assistance and trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006); *Thompson*, 9 S.W.3d at 813. We will find a counsel's performance deficient only if the conduct is so outrageous that no competent attorney would have engaged in it. *Andrews*, 159 S.W.3d at 101. "When handed the task of determining the validity of a defendant's claim of ineffective assistance of counsel, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Thompson*, 9 S.W.3d at 813 (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)).

## B. Failure to Prepare Appellant to Testify

Appellant contends that his trial counsel was ineffective for failing to adequately prepare him to testify. Specifically, appellant complains that his trial counsel elicited testimony from him about how important he was, and that he stepped on the complainant, was on the phone with a "little chick" even though the complainant's mother was his girlfriend, and he had suffered from the incident. Appellant argues that trial counsel should have told him not to include unnecessary

8

and prejudicial information about his social life, avoid appearing arrogant, and respond with short answers rather than allowing him to ramble.

In support of his argument that trial counsel failed to adequately prepare him to testify, appellant directs this Court to *Ex parte Guzmon* and *Pererro v. State*. In *Guzmon*, a habeas proceeding, the Court of Criminal Appeals found defense counsel's performance deficient where counsel testified at the writ hearing that he merely subpoenaed the punishment witnesses suggested by the applicant and met them immediately before the punishment stage began. 730 S.W.2d 724, 734 (Tex. Crim. App. 1987) ("This was insufficient preparation."). In *Perrerro*, the defendant's trial counsel testified at the hearing on the motion for new trial that he was negligent when he failed to sufficiently prepare the defendant to testify so as to avoid opening the door to his criminal history, an omission supported by the defendant's testimony at the hearing. 990 S.W.2d 896, 899 (Tex. App.—El Paso 1999, pet. ref'd).

Appellant's reliance on *Guzmon* and *Perrerro* is unavailing. In contrast to those cases, the record here is silent regarding trial counsel's preparation of appellant for the PSI hearing. Appellant did not file a motion for new trial raising an ineffective assistance claim, obtain an affidavit from trial counsel, or request a post-conviction hearing. Based on this silent record, appellant has failed to meet his burden to prove that his counsel's performance was deficient. *See Toledo v. State*,

519 S.W.3d 273, 289 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (concluding that defendant's claim that trial counsel failed to adequately prepare him to testify at PSI hearing lacked merit where record was silent regarding counsel's preparation); *Darkins v. State*, 430 S.W.3d 559, 571 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (finding that defendant's ineffective assistance claim that trial counsel failed to adequately prepare him to testify in his own defense lacked merit where record did not reflect counsel's strategy for appellant's testimony or defendant's preparation for trial).

## C. Failure to Prove Probation Eligibility

Appellant argues that his trial counsel was ineffective because she did not present evidence at the hearing showing that he was eligible for probation.

"A defendant is eligible for community supervision . . . if: (1) before the trial begins, the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony in this or any other state; and (2) the jury enters in the verdict a finding that the information contained in the defendant's motion is true." TEX. CODE CRIM. PROC. art. 42A.055(b). To be eligible for jury-recommended probation, a defendant bears the burden of pleading and proving that he has no prior felony convictions. *Speth v. State*, 6 S.W.3d 530, 533 (Tex. Crim. App. 1999).

In support of his argument, appellant relies on *San Roman v. State*, 681 S.W.2d 872 (Tex. App.—El Paso 1984, writ ref'd).  There, the court of appeals held that trial counsel rendered ineffective assistance by failing to introduce any evidence demonstrating the defendant's eligibility for probation.  *See id*. at 875.  *San Roman*, however, is distinguishable from the case before us.  Here, appellant elected to have the trial judge, not a jury, assess his sentence.  A defendant who is sentenced by the trial judge may be eligible for community supervision even if he has been convicted of a felony.  *See* TEX. CODE CRIM. PROC. art. 42A.053, 42A.054 (discussing judge-ordered community supervision).  Because appellant did not have to prove that he had not been previously convicted of a felony to be eligible for probation, his trial counsel was not ineffective for failing to offer such proof.  *See id.* art. 42A.053; *see also Norris v. State*, No. 01-15-00484-CR, 2016 WL 635122, at *2 (Tex. App.— Houston [1st Dist.] Feb. 11, 2016, no pet.) (mem. op., not designated for publication) (concluding that defendant's counsel was not ineffective for failing to offer proof of defendant's eligibility for probation where trial judge, not jury, assessed defendant's punishment).

**D. Failure to Object to Sentence as Cruel and Unusual Punishment**

Appellant argues that his trial counsel rendered ineffective assistance when she failed to object to appellant's twenty-six year sentence as cruel and unusual punishment in violation of the Eight Amendment.

11

To establish ineffective assistance for failing to object, appellant must show that, if his counsel had objected, the trial court would have erred in overruling the objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996) (per curiam); *Jacoby v. State*, 227 S.W.3d 128, 131 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). The Eighth Amendment forbids "extreme sentences that are 'grossly disproportionate' to the crime." *State v. Simpson*, 488 S.W.3d 318, 322 (Tex. Crim. App. 2016) (citing *Ewing v. California*, 538 U.S. 11, 23 (2003) (plurality op.)). Punishment assessed within the statutory limits is generally not cruel and unusual punishment. *Jacoby*, 227 S.W.3d at 131. However, a punishment must be in proportion to the crime even if assessed within the statutory range. *Solem v. Helm*, 463 U.S. 277, 290 (1983); *Ajisebutu v. State*, 236 S.W.3d 309, 314 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

To determine whether a sentence for a term of years is grossly disproportionate for a particular defendant's crime, a court must judge the severity of the sentence in light of the harm caused or threatened to the victim, the culpability of the offender, and the offender's prior adjudicated and unadjudicated offenses. *Graham v. Florida*, 560 U.S. 48, 60 (2010); *Simpson*, 488 S.W.3d at 323. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences

12

imposed for the same crime in other jurisdictions. *Solem*, 463 U.S. at 290. If this comparative analysis validates an initial judgment that the sentence is grossly disproportionate, the sentence is cruel and unusual. *Graham*, 560 U.S. at 60; *Simpson*, 488 S.W.3d at 323.

Serious bodily injury to a child is a first-degree felony for which the range of punishment is "imprisonment . . . for life or for any term of not more than 99 years or less than five years." *See* TEX. PENAL CODE §§ 12.32, 22.04(a), (e). Appellant's sentence of twenty-six years is within the statutory range and at the lower end of the punishment range. Appellant contends that his sentence is grossly disproportionate to the crime because he has no prior felony convictions, he was eligible for probation, and he has never been granted adult probation. However, the mere possibility of probation or deferred adjudication community supervision does not render a sentence of incarceration cruel and unusual. *See Combs v. State*, 652 S.W.2d 804, 806 (Tex. App.—Houston [1st Dist.] 1983, no pet.) (holding punishment, which was within statutory limits, was not cruel and unusual even though defendant was eligible for probation and had never been convicted of any felony); *Cadieux v. State*, 711 S.W.2d 92, 95 (Tex. App.—Austin 1986, pet. ref'd) (concluding no basis from departing from general rule that punishment assessed within statutory limits is not cruel and unusual even though defendant was high school graduate, had honorable military record, and was eligible for probation).

With regard to the severity of appellant's sentence in light of the harm caused to the complainant, the evidence showed that the complainant suffered painful second-decree burns to nine percent of his body, including his genitals, buttocks, legs, and elbow, and that he sustained permanent skin discoloration as a result of his burns. Although appellant testified that the complainant was sitting in the water and only softly moaning, the trial court heard evidence that the complainant's burns were consistent with being submerged in 121 degree Fahrenheit water for thirty to sixty seconds, that the complainant would have cried, screamed, and tried to get out of the scalding water, and that the complainant did not sustain any burns to his feet which he would have had he been sitting or standing in the bathtub. Although appellant testified that he accidentally stepped on the complainant, the trial court also heard testimony that the laceration to the complainant's liver required significant force, such as that sustained in high-velocity injuries. In addition to the physical trauma and scars, the foster mother testified that the complainant has suffered emotional and psychological trauma as a result of this incident. As to culpability, appellant pleaded guilty to the charged offense.

Finally, appellant's criminal history, including his charge for aggravated robbery (reduced from capital murder) when he was sixteen years old, twenty-two disciplinary write-ups while in juvenile detention, and subsequent misdemeanor offenses for evading arrest, failure to identify as a fugitive, possession of marijuana,

14

burglary of a motor vehicle, and failure to stop and give information after he hit someone with his car, also support a finding that appellant's sentence is not grossly disproportionate to the crime he committed. *See generally Simpson*, 488 S.W.3d at 323 (stating courts consider offender's prior adjudicated and unadjudicated offenses when determining whether sentence is grossly disproportionate). In light of these facts, we cannot say that appellant's twenty-six year sentence is grossly disproportionate.[2] Thus, we conclude that appellant's trial counsel was not ineffective because, even if she had made an objection to appellant's sentence as grossly disproportionate to the convicted offense, the judge would not have erred in overruling the objection. *See Jagaroo v. State*, 180 S.W.3d 793, 801 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *Vaughn v. State*, 888 S.W.2d 62, 74 (Tex. App.—Houston [1st Dist.] 1995), *aff'd*, 931 S.W.2d 564 (Tex. Crim. App. 1996).

Because appellant has not satisfied the first prong of *Strickland* for any of the three complaints about his trial counsel's performance, appellant has failed to satisfy his burden to show ineffective assistance of counsel. *See Williams*, 301 S.W.3d at 687. Accordingly, we overrule appellant's first point of error.

---

[2]     Because we have found no gross disproportionality, we do not need to perform the comparative analysis set forth in *Solem*. *See State v. Simpson*, 488 S.W.3d 318, 323 (Tex Crim. App. 2016).

**Cruel and Unusual Punishment**

In his second point of error, appellant contends that his sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment because the trial court sentenced him to twenty-six years' confinement even though he was eligible for probation.

To preserve a complaint that a sentence constitutes cruel and unusual punishment, a defendant must make a timely request, objection, or motion and receive an adverse ruling. *See* TEX. R. APP. P. 33.1(a); *Curry v. State*, 910 S.W.2d 490, 497–98 (Tex. Crim. App. 1995). Appellant neither objected at sentencing nor raised the issue in a motion for new trial. The Court of Criminal Appeals has held that defendants may not assert an Eighth Amendment claim for the first time on appeal. *See e.g.*, *Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013) (citing with approval *Russell v. State*, 341 S.W.3d 526 (Tex. App.—Fort Worth 2011, no pet.), which held that defendant did not preserve Eighth Amendment complaint not raised at sentencing); *Lucero v. State*, 246 S.W.3d 86, 98 (Tex. Crim. App. 2008) (holding that defendant did not raise Eighth Amendment claim in trial court and therefore did not preserve it for appellate review).

Appellant concedes that the failure to raise an objection on Eighth Amendment grounds waives any such complaint on appeal. Citing Rule of Evidence 103, he nevertheless asserts that "nothing in the rules precludes taking notice of

16

fundamental errors affecting substantial rights although they were not brought to the attention of the courts." *See* TEX. R. EVID. 103(e) ("In criminal cases, a court may take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved.")  Appellant presents no argument or citation to authority in support of the proposition that the trial court's sentence amounts to fundamental error.  Therefore, he has waived this argument.  *See* TEX. R. APP. P. 38.1(i). Even absent waiver, we conclude that no such error occurred in this case. As previously discussed, appellant was convicted of a first-degree felony and sentenced at the lower end of the statutory range of punishments authorized by the Legislature for such offenses.  *See* TEX. PENAL CODE § 12.32(a).  Punishment assessed within the statutory limits is generally not cruel and unusual punishment. *Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972); *Young v. State*, 425 S.W.3d 469, 474 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).  And, for the reasons discussed above, appellant's punishment is not grossly disproportionate to the crime committed.  Accordingly, we overrule appellant's second point of error.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice

17

Panel consists of Justices Lloyd, Goodman, and Landau.

Do not publish.   TEX. R. APP. P. 47.2(b).